**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARY SERSHEN

    Plaintiff,

        v.

EUGENE CHOLISH, J. SCOTTY
LEMONCELLI, BOB HARVEY,
FORMER MAYOR KENNETH
PROPST, MAYOR ED FAIRBROTHER,
BOROUGH OF ARCHBALD and
STILLWATER ENVIRONMENTAL
SERVICES,

    Defendants.

CIVIL ACTION No. 3:07-CV-1011

(JUDGE CAPUTO)

<u>**MEMORANDUM**</u>

Presently before the Court is the Motion to Dismiss Plaintiff's Complaint (Doc. 1) of

Defendants Eugene Cholish, J. Scotty Lemoncelli, Bob Harvey, Former Mayor Kenneth

Propst, Mayor Ed Fairbrother, and Borough of Archbald (Doc. 14).  Because Plaintiff has

standing to bring this claim; because it is redundant to sue both a municipality and its

officials in their official capacities; because Plaintiff has made no factual allegations

against Defendants Propst or Fairbrother; because Plaintiff has stated claims against

Defendant Cholish for unreasonable seizure, First Amendment retaliation, state law false

arrest and malicious prosecution, and false arrest under the Federal Constitution;

because she has not stated claims against Defendant Cholish under the Due Process

Clause, for malicious prosecution under the Federal Constitution, or for assault, battery,

or abuse of process under state law; because Plaintiff has stated a claims for violation of

her Fourth Amendment rights against Defendant Harvey, her procedural due process

rights against Defendants Harvey, Lemoncelli, and Archbald Borough, and her rights under the Takings Clause against the Borough; because Plaintiff has stated claims for civil conspiracy both under § 1983 and Pennsylvania law; and because she has alleged sufficient facts to support an award of punitive damages against the individual Defendants, Defendants' motion to dismiss will be granted in part and denied in part. Because Federal Rule of Civil Procedure 15 and precedent from the Third Circuit Court of Appeals call for leave to amend a complaint being freely given, especially in civil rights cases, the Court will grant Plaintiff's request that the Court grant her leave to amend her Complaint.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

Plaintiff Mary Sershen filed her Complaint (Doc. 1) on June 1, 2007.  Therein, she alleged as follows: At all relevant times, Defendant Eugene Cholish was a police officer employed by the Borough of Archbald, Defendant J. Scotty Lemoncelli was the Borough's Zoning Officer and a policymaker for the Borough, and Defendant Bob Harvey was the Borough's Fire Chief and a policymaker for the Borough.  (Compl., Doc. 1 ¶¶ 4-6.) Defendant Kenneth Propst was, until December 31, 2005, the Mayor of the Borough and a policymaker for the police department and the Borough.  (*Id.* ¶ 7.)  Defendant Ed Fairbrother was at relevant times after January 1, 2006 the Mayor of the Borough and a policymaker for the police department and the Borough.  (*Id.* ¶ 8.)  Defendant Borough of Archbald is a municipal corporation.  (*Id.* ¶ 9.)  And Defendant Stillwater Environmental

2

Services, Inc., is a corporation awarded a contract with the Borough for demolishing Plaintiff's property.  (*Id.* ¶¶ 10, 31, 33-34.)

Plaintiff alleges that in 1996 she and her then-husband David Barth purchased property located at 590 Main St., Eynon, Pennsylvania (the Eynon Property), which was improved with a two-story dwelling.  (*Id.* ¶ 12.)  Plaintiff, her husband, and her father signed the mortgage, but only Plaintiff's name and her husband's were on the deed.  (*Id.* ¶ 13.)  Plaintiff separated from her husband and moved out of the Eynon Property on May 27, 2005 and filed for divorce on June 6, 2005.  (*Id.* ¶¶ 14-15.)  The divorce decree was issued on or about January 11, 2007.  (*Id.* ¶ 15.)

On July 11, 2005, after Plaintiff had moved out, there was a fire at the Eynon Property, which did not completely destroy it.  (*Id.* ¶¶ 16-17.)  The next day, Plaintiff filed a claim for damages caused by the fire under her homeowner's policy with Allstate Insurance Company (Allstate), and a representative from Allstate went to the property and boarded up most of the downstairs windows.  (*Id.* ¶¶ 18-19.)  Plaintiff's father later, in March 2006, boarded and re-boarded windows and visited the property at other times to perform upkeep.  (*Id.* ¶ 21.)  An Allstate adjustor estimated the replacement value of the home, less depreciation, to be sixty-five thousand, one hundred eighty-eight dollars and seventh-three cents ($65,188.73) and the replacement value of the contents, less depreciation and the deductible, to be thirteen thousand, nine hundred twenty-four dollars and seventy-seven cents ($13,924.77).  (*Id.* ¶ 20.)

Plaintiff alleges that on June 12, 2006, Fire Chief Harvey entered the Eynon Property without a warrant, probable cause, or notice to Plaintiff, and then prepared a

3

letter to the Borough's solicitor expressing his recommendation that the structure must be torn down because of the cost that would be required to rebuild it in a safe and liveable condition.  (*Id.* ¶¶ 22-23.)  Removing the structure and bringing the property to a safe condition would cost between ten thousand ($10,000) and eleven thousand ($11,000) dollars, he estimated.  (*Id.* ¶ 23.)  Plaintiff alleges that Harvey's walkthrough of the property exceeded the scope of any examination permitted under Borough Ordinance 4 of 1979 § 2 and that his failure to send Plaintiff a copy of his letter to the Borough violated Borough Ordinance 4 of 1979 § 3.  (*Id.* ¶¶ 22, 24-25.)

Shortly after receiving Harvey's letter, on June 19, 2006, the Borough's solicitor notified Allstate that it must issue a check for eleven thousand dollars ($11,000.00) to the Borough for removal of the structure on the Eynon Property, pursuant to Borough Ordinance 1 of 2004; he did not send Plaintiff a copy of this letter.  (*Id.* ¶ 26.)  On July 5, 2006, Allstate sent a check to the Borough for ten thousand forty-one dollars and ninety-seven cents ($10,041.97).  The minutes of a Borough Council meeting on July 12, 2006 state that the Borough received the check for demolition or other action in the event of an emergency situation at the Eynon Property.  (*Id.* ¶ 28.)  On July 15, 2006, Harvey advised Jack Giordano[1] that the structure be taken down as soon as possible to eliminate unsafe conditions there, but he did not send a copy of this letter to Plaintiff.  (*Id.* ¶ 29.)  Plaintiff was unaware of all the foregoing activities at the time they occurred.

Defendant Lemoncelli, the zoning officer, allegedly began soliciting bids for the demolition of the Eynon Property and on August 7, 2006, he accepted a proposal from

---

[1] The Complaint does not explain who Jack Giordano is.

Defendant Stillwater to raze the property; this proposal contained Plaintiff's name and current cell phone number.  (*Id.* ¶¶ 30-31.)  At an August 16, 2006 meeting of the Borough, the Borough awarded the demolition contract to Stillwater.  (*Id.* ¶ 33.)  In mid-August 2006, Anthony Giordano, on behalf of the Borough, asked the Pennsylvania American Water Demolition Department to remove the meter and shut off the water at the property, and nobody notified Plaintiff of this action - though, Plaintiff believes the water had been turned off in July 2005.  (*Id.* ¶ 32.)  And on August 19, 2006, still unknown to Plaintiff, Stillwater was at the Eynon Property to demolish the dwelling there. (*Id.* ¶ 34.)  By August 22, 2006, Stillwater had completely demolished the dwelling and no Defendant ever made any attempt to notify Plaintiff of the demolition, and she was not provided with compensation for her property or an opportunity to repair or sell the property, or even to remove personal belongings.  The property, Plaintiff alleges, was not a hazzard or nuisance, and there were alternatives to demolition.    (*Id.* ¶¶ 56-60.)

Plaintiff received her first notice of the demolition on August 19, 2006.  On that day, she visited the property, saw the trucks, and asked some workers why they were at the property.  When they said they were tearing the dwelling down, she asked for paperwork verifying this, and they replied that they needed to find their boss but could not.  (*Id.* ¶ 35.)  Because the workers could not prove they had authority to tear down the dwelling, Plaintiff called the police, and Defendant officer Cholish responded.  (*Id.* ¶¶ 37-38.)  When Cholish arrived, Plaintiff appealed for his help, stating that she did not authorize any demolition.  (*Id.* ¶ 39.)  Cholish then made a phone call and told Plaintiff that she did not own the property; rather, the bank did.  (*Id.* ¶ 40.)  He refused to tell

Plaintiff whom he had called and then ordered her off the property.  (*Id.* ¶ 40-42.)

Although her name was still on the deed, Plaintiff complied and walked off the property

onto Borough property next to it.  (*Id.* ¶¶ 42-43.)  Cholish again told her to stay off the

Eynon Property; Plaintiff replied that she was not on the Eynon Property, she was on

Borough property next to it, and then she left the area.  (*Id.* ¶¶ 43-44.)  Plaintiff later

returned with her adult daughter and saw the same Stillwater workers there and saw

wood beams being removed from the dwelling.  (*Id.* ¶ 45.)  Cholish and another officer

from the Mayfield Police Department, whose identity is unknown, soon returned to the

property as well, and Cholish told Plaintiff that he had ordered her to stay off the Eynon

Property.  (*Id.* ¶¶ 46-47.)  Plaintiff again stated that even though she owned the Eynon

Property, she was not standing on it; instead, she was on Borough property.  (*Id.* ¶ 48.)

To this, Cholish replied that "that was enough" and told Plaintiff she was under arrest;

when Plaintiff asked what she was being arrested for, Cholish told her it was for

trespassing on the Eynon Property.  He never read Plaintiff her rights.  In response to

Plaintiff's protestation that she owned the Eynon Property, Cholish again said that she did

not own it, and he transported her to the Archbald Police Station and put her, still

handcuffed, into a cell.  (*Id.* ¶¶ 49-54.)

Some time later, the Chief of the Archbald Police arrived at the station and had a

conversation with Cholish outside of Plaintiff's presence, and then Cholish released

Plaintiff and told her he would send charges to her in the mail.  (*Id.* ¶ 55.)  In September

2006, Cholish filed and mailed to Plaintiff a charge of disorderly conduct under 18 Pa.

Cons. Stat. Ann. § 5503(a)(4), but filed no trespassing charge.  (*Id.* ¶ 61.)  Cholish did not

appear at the November 2, 2006 hearing for the disorderly conduct charge, so the magistrate dismissed it.  (*Id.* ¶ 63.)

Plaintiff sues all individually named Defendants in both their individual and official capacities.  In Count One (I), Plaintiff alleges that Cholish arrested her without probable cause, in violation of her rights under the Fourth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, and under the Due Process Clause of the Fourteenth Amendment.  In Count Two (II), Plaintiff alleges that Cholish seized and prosecuted her in retaliation for her speech, in violation of her rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment.  Plaintiff also brings state common law claims for assault, (Count III), battery (Count IV), and abuse of process (Count VII) against Cholish, as well as claims for false arrest and imprisonment (Count V) and malicious prosecution (Count VI) under both state law and the federal constitution.

Plaintiff further alleges that Defendants Lemoncelli (Count VIII), Harvey (Count IX), Propst (Count XI), and Fairbrother (Count XII) deprived her of "property rights" in violation of the Fourteenth Amendment.  In Count Ten (X), Plaintiff alleges that Harvey violated her rights under the Fourth and Fourteenth Amendments by entering her property without a warrant.  In Count Thirteen (XIII), Plaintiff alleges that the Borough of Archbald engaged in a policy or custom of depriving her of her property rights without due process of law and effected a taking of her property without just compensation in violation of her rights under the Fifth and Fourteenth Amendments.  Counts Fourteen (XIV), Fifteen (XV) and Sixteen (XVI) are brought against Stillwater, which does not join the other

Defendants in moving to dismiss.  Count Fourteen, brought pursuant to 42 U.S.C. §

1983, alleges that Stillwater engaged in a taking of Plaintiff's property without just

compensation and deprived her of due process rights under the Fourteenth Amendment,

and Counts Fifteen and Sixteen allege conversion, destruction of property, and negligent

demolition in violation of state law.  Finally, in Count Seventeen (XVII), Plaintiff alleges

that all Defendants except the Borough of Archbald entered into a civil conspiracy to

engage in unlawful conduct, depriving Plaintiff of her federal constitutional and state

common law rights.

All Defendants except Stillwater filed a Motion to Dismiss Plaintiff's Complaint

(Doc. 14) on August 6, 2007, and filed a Memorandum in Support of their motion (Doc.

17) on August 17, 2007.  Plaintiffs filed their Memorandum in Opposition to Defendants'

motion (Doc. 18) on August 24, 2007, and no reply brief was filed.  The motion is fully

briefed and ripe for disposition.


**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of

a complaint, in whole or in part, for failure to state a claim upon which relief can be

granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167

L.Ed.2d 929 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355

U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d. 80 (1957)).  As a result of the *Twombly* holding,

8

Plaintiffs must now nudge their claims "across the line from conceivable to plausible" to avoid dismissal. *Id*. The Supreme Court noted just two weeks later in *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), that *Twombly* is not inconsistent with the language of Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Id*. (citing *Twombly*, 127 S.Ct. at 1959 (quoting *Conley*, 355 U.S. at 47)).

There has been some recent guidance from the Courts of Appeals about the apparently conflicting signals of *Twombly* and *Erickson.* The Second Circuit Court of Appeals reasoned that "the [Supreme] Court is not requiring [in *Twombly*] a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). Similarly, the Seventh Circuit Court of Appeals stated that "[t]aking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, — F.3d —, 2007 WL 2406859, at *4 (7th Cir. Aug. 24, 2007).

Until further guidance, this Court will follow the guidance of the Second and Seventh Circuit Courts of Appeals, and apply a flexible "plausibility" standard, on a case-

9

by-case basis, in those contexts in which it is deemed appropriate that the pleader be obliged to amplify a claim with sufficient factual allegations.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will ultimately prevail.  *See id.*  In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

**DISCUSSION**

**I. Standing**

Defendants argue that Plaintiff lacks standing to bring a civil rights suit arising out of the demolition of the property because it was jointly owned by Plaintiff and her then-husband.  (Defs.' Mot. to Dismiss, Doc. 14, at 2.)  The minimum requirements for standing are that (1) the Plaintiff have suffered an "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent," (2) the injury must be "fairly traceable to the challenged action of the defendant," and (3) it must be likely that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotation marks, and alterations omitted).  Additionally, to have standing, a plaintiff must meet three prudential limitations on standing.  The prudential limit relevant here is the requirement that " the plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Defendants claim that Plaintiff and her former husband, as spouses, owned the home in a tenancy by the entirety, and that they are "looked upon as a single entity, just like a corporation." (Defs.' Mem. in Supp., Doc. 17, at 5.)  It is this entity, not Plaintiff or her ex-husband individually, which has the claim for allegedly wrongful demolition of the property, Defendants argue.  (*See id.* at 6.).  But Plaintiff's claims based on the demolition of the property are brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides a cause of action for the vindication of federal constitutional and statutory rights of "*any citizen of the United States or other person within* the jurisdiction thereof."  42 U.S.C. § 1983 (emphasis added).  Plaintiff is a citizen of the United States

and a person within its jurisdiction, and she alleges that she had an ownership interest in the Eynon Property.  She shared her ownership interest with her then-husband, but it cannot be said that she did not have rights in the property.  And her suit claims that those rights in the property were interfered with in such a way as to violate *her* constitutional rights.  Her suit is not based on the rights of the tenancy by the entirety as an entity, nor could it be.  A tenancy by the entirety is not an entity that has federally protected rights.  Plaintiff, however, does have those rights, and as she asserts her own rights in the property, she has standing to bring this suit.

## II. Suits Against Individual Defendants in Their Official Capacities

Plaintiffs have sued all individually named Defendants in both their individual and official capacities.  Defendants seek dismissal of the official capacity claims as redundant with Plaintiffs' claims against the Borough of Archbald pursuant to *Monell v. Department of Social Services of the City of New York.  See* 436 U.S. 658, 690-91 (1978).  Actions against Defendants in their official capacities are "in all other respects other than name" a suit against the government entity.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, I will grant Defendants' motion to dismiss with respect to these claims.

## III. Defendants Propst and Fairbrother: Counts Eleven, Twelve, and Seventeen

Plaintiff alleges that former Mayor Propst and Mayor Fairbrother deprived her of property rights in violation of the Fourteenth Amendment (Counts XI and XII).  She also includes them in her claim of civil conspiracy (Count XVII).  Defendants move to dismiss

the claims against these Defendants.  Plaintiff has not alleged that either Defendant was

directly involved in the events surrounding the demolition of the house on the Eynon

Property, and to be liable under § 1983, a defendant must have had personal

involvement in the alleged wrongdoing.  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.

2005).  "Supervisory liability cannot be based solely upon the doctrine of respondeat

superior."  *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990).  Rather, to hold

a superior liable under § 1983 for the unconstitutional activities of one of his

subordinates, a plaintiff must establish a causal connection between the superior's

actions and the subordinate's unconstitutional activity.  *See Black v. Stephens*, 662 F.2d

181, 189-91 (3d Cir. 1981), *cert. denied*, 455 U.S. 1008 (1982).  "Personal involvement

can be shown through allegations of personal direction or of actual knowledge and

acquiescence.  Allegations of participation or actual knowledge and acquiescence,

however, must be made with appropriate particularity."  *Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1988).

Plaintiff has not alleged that any Defendants or anyone affiliated with the Borough

took any actions at all prior to January 1, 2006, the date that Defendant Fairbrother

replaced Defendant Propst as mayor and Propst became a private citizen.  She has

therefore stated no claim against Propst.  Further, Plaintiff's complaint contains no factual

allegations that Defendant Fairbrother personally directed his subordinates in any of their

challenged actions, or that he knew of and acquiesced in those actions.  In fact, the

factual allegations in the complaint contain no mention of Defendant Fairbrother at all.

Plaintiff has therefore failed to state a claim upon which relief can be granted against

13

Defendant Fairbrother, and Defendant's motion to dismiss those claims will be granted.

## IV. Probable Cause: Defendant Cholish

Defendants argue that Officer Cholish had probable cause to arrest Plaintiff on August 19, 2006, and that therefore, Plaintiffs' claims alleging a violation of the Fourth Amendment (Count I), retaliation for exercise of her First Amendment rights (Count II), violation of due process rights under the Fourteenth Amendment (Counts I and II), false arrest and imprisonment (Count V), malicious prosecution (Count VI), and abuse of process (Count VII) should all be dismissed for failure to state a claim upon which relief can be granted.

The Supreme Court has adopted a "totality of the circumstances" approach to the existence of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As such, the presence of probable cause is most often regarded as a factual question for the jury in civil actions brought pursuant to § 1983. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). The district court is, however, permitted to "conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Id.* at 788-89 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

That is not the case here. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir.

14

2003).  Probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt," but it does require "more than mere suspicion." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995).  Plaintiff alleges that Officer Cholish arrived at the Eynon Property on August 19 only after she had called him there, that she told him she owned the property and did not authorize any demolition, that he made a phone call to someone whose identity he would not share and then incorrectly told her that she did not own the property and ordered her off of it, that she stepped off the property, let Cholish know she was standing on Borough property, and then left the scene.  (Compl., Doc. 1 ¶¶ 37-44.)  She also alleges that when she returned later that day and Cholish told her that he had ordered her to stay off the property, she again informed him of the fact that she was not presently standing on the Eynon Property but was standing on adjacent Borough property.  (*Id.* ¶¶ 45-48.)  She alleges that it was then, in response to only the facts above and no others, that Cholish told her "that was enough" and arrested her for trespassing.  (*Id.* ¶¶ 49-50.)  She alleges that throughout her interaction with Cholish, she maintained that she did in fact own the Eynon Property and could not be trespassing on it, and that, in any case, ever since the first time Cholish ordered her to step off the Eynon Property, she complied and stood only on adjacent Borough property.

The factual allegations above, viewed in the light most favorable to Plaintiff, could reasonably support a finding that no probable cause existed for Cholish to believe that Plaintiff was committing the crime of trespassing.  I will not dismiss Plaintiff's claims in Counts I, II, V, VI, and VII for lack of probable cause, but will briefly examine the other elements of those claims to determine whether Plaintiff has stated claims upon which

relief can be granted.

### A. Unreasonable Seizure

A seizure, in the form of an arrest, is unreasonable within the meaning of the Fourth Amendment if it is carried out without either a warrant or probable cause. *Wright v. City of Phila.*, 409 F.3d 595, 601 (3d Cir. 2005). As discussed above, Plaintiff has alleged sufficient facts for a reasonable fact-finder to determine that she was arrested without a warrant or probable cause. Therefore, Count I of Plaintiff's Complaint states a claim for unreasonable seizure upon which relief can be granted.

### B. First Amendment Retaliation

Plaintiff claims, in Count II, that Defendant Cholish arrested her and initiated prosecution in retaliation for her speech. "The First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A claim for First Amendment retaliation has three elements: (1) that plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that the protected activity caused the retaliation. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

Concerning the first element, "except for certain narrow categories deemed unworthy of full First Amendment protection - such as obscenity, 'fighting words' and libel - all speech is protected by the First Amendment." *Eichenlaub v. Twp. of Indiana*, 385

F.3d 274, 282-83 (3d Cir. 2004).  Plaintiff claims that her protected speech consisted of her statements to Officer Cholish that she did in fact own the Eynon Property and that she was not, as he intimated, standing on that property any more but was standing on adjacent Borough property.  Relevant to this speech, the Supreme Court has held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," and includes the ability "to oppose or challenge police action." *City of Houston, Texas v. Hill*, 482 U.S. 451, 461, 462-63 & n.12 (1987).  Plaintiff has successfully alleged that she engaged in protected speech.

Regarding the second element, the Third Circuit Court of Appeals has stated that "[t]he effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimus*."  *McKee v. Hart*, 436 F.3d 165 (3d Cir. 2006) (internal quotation marks omitted).  As an arrest is more than *de minimus*, Plaintiff has successfully alleged the second element.

The third element, causation, might be established by timing which is "unusually suggestive" of retaliatory motive."  *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d. Cir. 2003).  And it can certainly be established by "timing plus other evidence ... where the temporal proximity is not so close as to be unduly suggestive."  *Id.* at 513 (internal quotation marks omitted).  Officer Cholish allegedly said "that was enough" and arrested Plaintiff immediately after she disputed his assertions that she did not own the Eynon Property and that she was standing on it.  This timing is suggestive of retaliatory motive. Additionally, Plaintiff has alleged facts sufficient for a reasonable jury to find that she was arrested without probable cause.  This is also evidence of retaliation.  For example, see

17

*Pulice v. Enciso*, where the Third Circuit Court of Appeals held that a plaintiff "failed to provide a factual basis for her retaliation claim" because there was probable cause for her arrest: "She was not arrested for expressing her views, but because she and her husband *acted* unlawfully when they physically obstructed the Gas Company's right of way." 39 Fed. Appx. 692, 696 (3d Cir. 2002) (not precedential).

Because Plaintiff has alleged all three elements of a claim for First Amendment retaliation, the Court will deny Defendants' motion to dismiss her retaliation claim in Count II.

### C. Due Process

Plaintiff also claims in Counts I and II that Cholish's arrest and filing of charges without probable cause constituted a deprivation of her due process rights under the Fourteenth Amendment.  Plaintiff does not specify whether her claims rest on the substantive or the procedural component of the Due Process Clause, but they could not rest on the substantive component: "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  The First and Fourth Amendments, as discussed above, provide explicit textual sources of constitutional protection to Plaintiff, so any reliance on the substantive component of the Due Process Clause is misplaced.

Based on the same principle, the procedural component of the Due Process Clause does not apply either.  Plaintiff does allege that Cholish deprived her of liberty without following the appropriate procedures, but her claim arising out of her arrest is properly brought under the Fourth Amendment, not the Fourteenth.  And her claim that her arrest occurred in retaliation for protected speech is properly brought under the First Amendment, not the Fourteenth.  A claim under the procedural component of the Due Process Clause would be redundant.  Therefore, Plaintiff has not stated a claim upon which relief can be granted for violation of her rights under the Due Process Clause, in Counts I and II.

### C. False Imprisonment and Malicious Prosecution

It not clear from the face of the Complaint whether Plaintiff brings her claims in Counts V and VI for false arrest and imprisonment and malicious prosecution pursuant to 42 U.S.C. § 1983 or under state law.  Although Plaintiff's brief also cites state law when discussing these claims, for thoroughness, I will analyze them under both state and federal law.

### 1. False Arrest and Imprisonment: Count Five

#### (a) State Law

There are two elements to a claim of false imprisonment under Pennsylvania law: "(1) the detention of another person, and (2) the unlawfulness of such detention."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  When, as here, detention is in the form of an arrest, to show the unlawfulness of that detention, Plaintiff must show "that the

process used for the arrest was void on its face or that the issuing tribunal was without jurisdiction; it is not sufficient that the charges were unjustified." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 984-85 (Pa. Super. 1997). The lack of probable cause, or a warrant, constitutes process that is void on its face. As the Court has noted above that Plaintiff has alleged facts sufficient for a reasonable jury to conclude that she was arrested without probable cause, Plaintiff has stated a claim for false arrest upon which relief can be granted. The Court will therefore deny Defendants' motion to dismiss Count V of Plaintiff's Complaint.

### (b) Federal Law

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Plaintiff has plead facts that, when viewed in the light most favorable to her, would allow a reasonable fact-finder to determine that she was arrested without probable cause. She has therefore stated a claim, under federal law, for false imprisonment based on her detention pursuant to that arrest.

### 2. Malicious Prosecution: Count Six

### (a) State Law

To state a claim for malicious prosecution, a plaintiff must allege that a defendant instituted criminal proceedings, for instance by filing a criminal complaint, "without probable cause, with malice, and that the proceedings were terminated in favor of the plaintiff." *Bradley v. Gen. Accident Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. 2001);

*Strickland*, 700 A.2d 984.  Claims of malicious prosecution can be brought against private individuals as well as police officers.  *See, e.g.*, *Turano v. Hunt*, 631 A.2d 822 (Pa. Commw. Ct. 1993).  Plaintiff has alleged that Defendant Cholish filed a charge of disorderly conduct against her.  (Compl. Doc. 1 ¶ 61.)  She has alleged that he did so without probable cause and with malice.  (*Id.* ¶¶ 84-85.)  And she has alleged that the proceedings terminated in her favor, after Cholish failed to appear at the hearing.  (*Id.* ¶¶ 63, 86.)  Therefore, Plaintiff has stated a claim for malicious prosecution upon which relief can be granted, and the Court will deny Defendant's motion to dismiss Count VI of Plaintiff's Compliant.

### (b) Federal Law

A malicious prosecution claim under § 1983 differs from the common law tort.  *See Donahue v. Gavin*, 280 F.3d 371, 379 (3d Cir. 2002).  A plaintiff must base his claim on a deprivation of liberty or some constitutional right other than substantive due process.[2] When the claim is brought under the Fourth Amendment, the elements of a malicious prosecution claim under § 1983 are (1) the defendant initiated a criminal proceeding; (2) he did so without probable cause; (3) the proceeding ended in plaintiff's favor; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) as a consequence of a proceeding, the plaintiff suffered a deprivation of liberty

---

[2]

In the wake of the Supreme Court's holding in *Albright v. Oliver*, 510 U.S. 266 (1994) (holding that the substantive component of the Due Process Clause of the Fourteenth Amendment provides no relief for one who claims he has been prosecuted without probable cause; "express[ing] no view" on whether such relief would be available under other amendments), the Third Circuit Court of Appeals has unequivocally stated that a claim of malicious prosecution may be based on a liberty interest protected by the Fourth Amendment or some other provision of the constitution, provided its not based on the substantive component of the Due Process Clause. *See, e.g., Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000); *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998).

consistent with the concept of seizure.  *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007).

While a claim for false arrest "covers damages only for the time of detention until the issuance of process or arraignment, and not more," a claim for malicious prosecution "permits damages for confinement imposed *pursuant to legal process*."  *Id.* at 82 (internal quotation marks and citations omitted; emphasis added).  Specifically, the fifth element of the claim requires that Plaintiff have suffered a deprivation of liberty consistent with seizure "*as a consequence of* a legal proceeding."  *Id.* (emphasis added).  It is in this element that Plaintiff's federal claim fails.  In *Gallo v. City of Phila.*, the Court of Appeals held that "the legal proceeding was the indictment," and then analyzed the "post-indictment" restrictions on the plaintiff's liberty.  161 F.3d 217, 222 (3d Cir. 1998).  Here, the process used against Plaintiff consisted of the charging papers mailed to her home charging her with disorderly conduct.  It is true that Plaintiff was arrested, but this arrest was not pursuant to legal process, and Plaintiff's false arrest claims under both federal and state law can provide her with a remedy for that arrest.  But, like the Court of Appeals in *Gallo*, I will analyze the restrictions on Plaintiff's liberty that occurred "post-indictment;" that is, after she was formally charged with a crime.  The only restriction on liberty after that time was that Plaintiff was compelled to appear at a hearing to defend herself.  But, "[m]erely being required to appear at trial ... is not a sufficient deprivation of liberty" to support a claim for malicious prosecution.  *Wiltz v. Middlesex County Office of Prosecutor*, No. 06-3610, 2007 WL 2717862, at *3 (3d Cir. Sept. 19, 2007) (citing *Dibella v. Borough of Beechwood*, 407 F.3d 599, 603 (3d Cir. 2005)).  In *Dibella*, the Court of

22

Appeals found there was no seizure to support a malicious prosecution claim when the plaintiffs "were never arrested; ... never posted bail; ... were free to travel; ... and did not have to report to Pretrial Services." 407 F.3d at 603. Plaintiff has not alleged that she suffered a deprivation of liberty consistent with the concept of seizure as a result of legal process that Cholish initiated against her. Therefore, she has not stated a claim upon which relief can be granted for malicious prosecution under § 1983.

_____**D. Abuse of Process: Count Seven**

Abuse of process is a state law tort. "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 32 (Pa. Super. 1990). There are three elements necessary to sustain the cause of action of abuse of process in Pennsylvania. They are: (1) the defendant used a legal process against the plaintiff, (2) that action was primarily to accomplish a purpose for which the process was not designed, and (3) harm was caused to the plaintiff. *Harris v. Brill*, 844 A.2d 567, 572 (Pa. Super. 2004). "Abuse of process, is, in essence, the use of legal process as a tactical weapon to coerce the desired result that is not the legitimate object of the process." *Id.*

Although Plaintiff has alleged that Officer Cholish used criminal legal process against her, resulting in her arrest and being charged with a crime, she has not alleged the essential second element: that he did so primarily to accomplish a purpose for which the process was not designed. Whereas malicious prosecution and malicious use of civil process have to do with the "wrongful initiation of such process," the tort of "abuse of

process is concerned with a perversion of a process after it is issued." *Rosen*, 582 A.2d at 32. Typical cases of abuse of process involve "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." *Id.* at 33. But, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at 32. All that Plaintiff has alleged is that Officer Cholish carried out the process of arrest and charging with bad intentions, not that he later used her arrest and charging to extort or intimidate her. The tort of abuse of process, therefore, is not applicable to Plaintiff's claim, and I will grant Defendants' motion to dismiss Count VII of Plaintiff's Complaint.


**V. Assault and Battery Claims Against Defendant Cholish: Counts Three and Four**

Defendants move to dismiss Counts III (assault) and IV (battery) against Defendant Cholish, arguing that in order to establish a claim for assault and battery against a police officer, Plaintiff must allege that the officer used excessive force, and Plaintiff here has failed to do so. (Defs.' Br. in Supp., Doc. 17, at 8-10.)

Generally, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citing *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. 1950)). But, as the Supreme Court of Pennsylvania has noted, "[i]n making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making

the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id.* Specifically, "[a] police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." *Id.* Plaintiff has not alleged that Officer Cholish used unreasonable, unnecessary, or excessive force while arresting her; therefore, she has not successfully alleged a claim for common law assault or battery against him, and Defendants' motion to dismiss these claims will be granted.

## VI. Fourth Amendment Claim Against Defendant Harvey: Count Ten

Plaintiff alleges that Defendant Harvey entered her property without a warrant, in violation of the Fourth Amendment. She alleges that on June 12, 2006, he conducted a "walkthrough" of the Eynon Property without a warrant, probable cause, or notice to Plaintiff. Defendant correctly points out that his alleged violations of Archbald Borough ordinances do not necessarily give rise to a cause of action under § 1983, as the statute provides a cause of action only for vindication of rights guaranteed by federal law, but not those guaranteed by municipal or state law. Nonetheless, Plaintiff has stated a claim for violation of rights guaranteed under the Federal Constitution.

Plaintiff argues that Harvey's walkthrough violated her Fourth Amendment rights because it was done without a warrant or probable cause. The Supreme Court has held that administrative searches to determine whether private property complies with safety, health, and fire codes "are significant intrusions upon the interests protected by the Fourth Amendment" and that they are searches which require a warrant. *Camara v. Mun.*

*Court of City and County of S.F.*, 387 U.S. 523, 534 (1967).  The Court clarified that "nothing we say today is intended to foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations."  *Id.*  "On the other hand," the Court continued, "in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day."  *Id.*

Plaintiff has alleged that Defendant Harvey conducted an administrative search of her property without a warrant or consent from her.  She has also alleged that the fire occurred in July 2005 and Defendant Harvey did not conduct his walkthrough until June 2006.  (*Id.* ¶¶ 16, 22.)  Although Defendant Harvey asserts that a warrant was not necessary because he was exercising his "community caretaking duties," the community caretaking doctrine applies only in emergency situations.  *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 846 (E.D. Pa. 2000) (referring to "the community caretaking or emergency doctrine," and describing the doctrine as applicable in emergency situations).  Plaintiff has sufficiently alleged that there was no emergency.  Although there may well have been reason to conduct an administrative search of the building to determine whether it was safe, the facts viewed in the light most favorable to Plaintiff suggest that "there [was] no compelling urgency to inspect at a particular time or on a particular day."  *See Camara*, 387 U.S. at 534.  Plaintiff has therefore stated a claim upon which relief can be granted for violation of her Fourth Amendment rights by Defendant Harvey, and Defendant's motion to dismiss Count X will be denied.

**VII.  Property Rights Claims:**

**A. Procedural Due Process**

In Count XIII, Plaintiff alleges that "the Borough, by and through its policy and decision makers, Lemoncelli, Harvey, Propst, and Fairbrother, engaged in a policy and/or custom of depriving Sershen of her property rights without due process of law," in violation of the Fourteenth Amendment.  (Compl., Doc. 1 ¶¶ 114, 119.)  And against the individual Defendants who remain in the case, Plaintiff makes the somewhat general allegation that Defendants Lemoncelli (Count VIII) and Harvey (Count IX) "deprived [her] of her property rights under the law ... [which] constituted a violation of [Plaintiff's] rights under the Fourteenth Amendment to the United States Constitution."  (Compl., Doc. 1 ¶¶ 93, 97.)  These claims will be analyzed as arising under the procedural component of the Due Process Clause.

**1. Legal Standard**

Analysis of a procedural due process claim proceeds in two (2) steps.  First, I must determine whether Plaintiff has alleged that she had a protected property interest.  As Plaintiff has alleged that she was a co-owner of the home on the Eynon Property, she has satisfied this first step.  Second, I must ask what process she was due.  This question itself involves a three (3) part test.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).  In determining whether the Plaintiff's procedural due process rights have been violated, the court must weigh: (1) the private interest affected by the government action; (2) "the risk of an erroneous deprivation" of

27

the private interest through the procedures used by the government, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the government function at issue and the fiscal and administrative burdens that additional or substitute procedural safeguards would require. *Id.* at 335.

### 2. Defendants Harvey and Lemoncelli

Defendants seek to dismiss the claims against Defendants Lemoncelli and Harvey on the ground that neither Defendant is not a policymaker. This argument, however, is irrelevant to the question of their individual liability. Whether an official is a policymaker bears on the question of municipal liability; specifically, whether the actions of the individuals can be considered "policy" and attributed to the municipality itself. But under § 1983, "*[e]very person* who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, *shall be liable* to the party injured." 42 U.S.C. § 1983 (emphasis added). Defendants do not challenge that Defendants Lemoncelli and Harvey were not acting under color of law, and indeed, their allegedly unconstitutional actions were taken in the course of their official duties.

### a. Fire Chief Harvey's Alleged Actions

Plaintiff's allegations against Harvey are as follows: Defendant Harvey conducted a walkthrough of the property that was unauthorized by municipal ordinances, then sent a letter to the Borough's Solicitor, with a copy to the Borough but no copy to Plaintiff, setting forth his findings and recommendations that the home on the Eynon Property

must be torn down because of the cost it would take to rebuild it in a safe and liveable condition. (Compl. Doc. 1 ¶¶ 22-25.)  He estimated it would cost between ten thousand ($10,000) and eleven thousand ($11,000) dollars to remove the building, and shortly thereafter, the Solicitor, in accordance with Harvey's recommendations, advised Plaintiff's insurance company that it must send the Borough a check for eleven thousand dollars ($11,000) that the Borough would use to demolish the home in the event of an emergency.  (*Id.* ¶ 26.)  After the Borough received this check, Harvey allegedly sent a letter to Jack Giordino, whose role the Complaint does not make clear, with no copy to Plaintiff, advising that the structure be taken down as soon as possible.  (*Id.* ¶ 29.)

### b. Zoning Officer Lemoncelli's Alleged Actions

Plaintiff has alleged that Defendant Lemoncelli solicited bids for the demolition of the Eynon Property, and at an August 16, 2006 Borough meeting, stated that he received three bids, after which the Borough awarded the contract to the low bidder, Defendant Stillwater.  (Compl., Doc. 1 ¶¶ 30, 33.)  Lemoncelli did not notify Plaintiff of the ongoing plans, although her name and current phone number were on the proposal from Stillwater that he accepted.  (*Id.* ¶ 31.)

### c. Has Plaintiff Alleged that Harvey and Lemoncelli Denied Her the Process She Was Due?

Under the first *Matthews* prong, the private interests affected by these actions are significant.  Taken in the light most favorable to Plaintiff, these facts show that Harvey set in motion a series of events that culminated in the demolition of Plaintiff's property. Plaintiff had an interest in knowing that the fire chief of the Borough was inspecting her

property and an interest in knowing that her insurance company, with which she had filed

a claim, was sending money to the Borough for the destruction of her property.  The facts

also show that Defendant Lemoncelli facilitated the process through which Plaintiff's

property was destroyed; she had a significant interest in knowing that a contract for the

destruction of her property was being negotiated.  Plaintiff had filed a claim with her

insurance company for the replacement value of the property and its contents.  (*Id.* ¶ 20.)

Although it is not alleged in the Complaint what the outcome of that claim was or what

Plaintiff's plans for the property were, the claim, viewed in the light most favorable to her,

evinces an intent to rebuild the home, which strengthens Plaintiff's interest in knowing of

the actions Harvey and Lemoncelli were taking.

Under the second prong, Harvey and Lemoncelli's actions did pose a risk of

erroneous deprivation to Plaintiff.  By proceeding with the demolition of her property

without informing her or giving her an opportunity to repair any structural defects that

rendered the house unsafe, these Defendants risked demolishing the home

unnecessarily.  By arranging for money to be paid to the city from Plaintiff's insurance

company, they risked depriving Plaintiff of funds from the insurance company with which

to rebuild the home.  To that end, there was significant probable value that this risk would

be eliminated by additional or substitute procedural safeguards, specifically, by simply

informing Plaintiff of what was going on and giving her an opportunity to cure any defects

by rebuilding.

Under the third *Matthews* prong, the government's interest in making structures

safe is very important.  But, the fiscal and administrative burdens of additional or

substitute procedural safeguards, that is, of at the least, Harvey copying Plaintiff on the

30

correspondence he sent and Lemoncelli informing Plaintiff of the important decisions about her property that were being made at a Borough meeting.

In light of the three *Matthews* factors, Plaintiff has alleged sufficient facts in support of her procedural due process claims against Defendants Harvey and Lemoncelli to survive Defendant's motion to dismiss Counts VIII and IX.

### 3. Borough of Archbald

A municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" in order to prevail.  *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  This custom must be "so widespread as to have the force of law."  *Id.* at 404.  Further, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."  *Id.*  Instead, the plaintiff must also "allege that a 'policy or custom' of [the Borough] was the 'moving force' behind the [constitutional] violation."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Brown*, 520 U.S. at 404).

There is, however, no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss.  *Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999).  This would be "unduly harsh" at this early juncture.  *Id.*  When accepting the facts in the Complaint as true, with all inferences that can be drawn from them, the Plaintiff could, after discovery, prevail on this claim by enunciating the specific

policies and demonstrating how they violated her rights.

For instance, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembauer v. Cincinnati*, 475 U.S. 469, 480 (1986). For example, a single decision by a municipality's properly constituted legislative body "unquestionably constitutes an act of official government policy." *Id.* Plaintiff here has alleged that the Borough Council, at a meeting at which minutes were taken, accepted the check from Plaintiff's insurance company. (Compl. Doc. 1 ¶ 28.) Plaintiff also alleged that at a later meeting, on August 16, 2006, the Borough Council awarded Stillwater the contract to demolish Plaintiff's house. (*Id.* ¶ 33.) Plaintiff also alleges that the Borough never gave her notice or an opportunity to be heard before taking these actions. When analyzed in light of the *Matthews* factor – including the Plaintiff's significant interest in receiving notice before her property was demolished and obtaining an opportunity to cure defects, the probable value and minimal administrative or financial burden on the Borough of the additional procedural safeguard of notifying Plaintiff of the plans to demolish her house, and the municipality's significant interest in ensuring the safety of structures – the Borough's alleged actions are sufficient to support Plaintiff's procedural due process claim at the pleading stage.

Furthermore, Plaintiff stated that the municipality violated her rights when it acted "by and through" Defendants Lemoncelli and Harvey, whom she alleges were policymakers. As discussed above, the actions Harvey and Lemoncelli allegedly took are sufficient to state a claim for a violation of procedural due process. Under *Pembaur*, then, if these Defendants "posses[ed] final authority to establish municipal policy with

respect to" the events that their actions set into motion, there would exist an alternative route to municipal liability.  But as I am denying Defendant's motion to dismiss on the basis of actions taken by the Borough Council, it is unnecessary to decide whether Harvey and Lemoncelli were final policymakers.

### B. Takings Claim Against Borough

Plaintiff alleges that the Borough took her property without providing her just compensation, in violation of the Fifth and Fourteenth Amendments.  (*Id.* ¶¶ 118-19.).  Defendants argue that the demolition of the building was not a taking at all but instead only an exercise of police power for which no compensation is necessary.  (Defs.' Br. in Supp., Doc. 17, at 11-12.)  If Defendants were exercising their police power only, then they did not effect a taking and owe Plaintiff no compensation, but "if regulation goes too far, it will be recognized as a taking."  *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).  Determining "how far is too far," is, with two (2) exceptions, a question left to "essentially ad hoc, factual inquiries."  *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992).  Those exceptions are two (2) categories of regulations that effect *per se* takings: regulations that compel the property owner to suffer a permanent physical invasion of his property, and those that deny all economically beneficial use of land.  *Id.*  Plaintiff may indeed argue that one of these two categories of *per se* takings applies to her, but even if she does not, the "ad hoc, factual inquir[y]" necessary to determine whether the Borough's demolition of her property was an exercise or police power or a taking precludes dismissal at this stage.  Defendants' motion to dismiss Plaintiff's takings claim

against the Borough will therefore be denied.

## VIII. Civil Conspiracy: Count XVII

Plaintiff did not specify whether Count XVII, which alleges that Defendants conspired to deprive her of rights under both federal and state law, is a claim for civil conspiracy under § 1983 or under Pennsylvania law.  It will therefore be treated as alleging both.

### A. Civil Conspiracy Under Section 1983

To prevail on a § 1983 conspiracy claim, Plaintiff must allege that Defendants, acting under color of state law, conspired to deprive her of a federally protected right.   To succeed on this claim, Plaintiff must allege both an underlying civil rights violation and a conspiracy involving state action.  *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d. Cir. 1999).  As for the underlying violation, Defendants argue that the claims arising from Plaintiff's arrest by Officer Cholish cannot form the basis of her conspiracy claim, because Plaintiff did not allege facts suggesting that Cholish formed an agreement with anyone to violate Plaintiff's civil rights by making a warrantless arrest or retaliating against her for her exercise of protected speech.  (Defs.' Br. in Supp., Doc. 17, at 10.)  But, Defendants overlook Plaintiff's allegation that near the beginning of her encounter with Officer Cholish, he made a phone call to someone whose identity he would not reveal to her, and that it was after he made the call that he ordered Plaintiff off the property and their confrontation began.  Discovery can bear out whether this phone

34

call or any other communications provide evidence of a conspiracy involving Cholish to violate Plaintiff's civil rights, but at this stage of the litigation, the alleged violations arising from Plaintiff's arrest, as well as the procedural due process violation that Plaintiff alleges, can serve as the underlying violations.

To sufficiently allege the second factor, conspiracy, "a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Panayotides v. Rabenold,* 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999).  Unlike a claim of conspiracy under § 1985, the conspiracy need not be motivated by invidious discrimination to be actionable.  *Ridgewood,* 172 F.3d at 254. And, Plaintiff need only meet the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  *E.g.*, *In re Bayside Prison Litig.,* 190 F. Supp. 2d 755, 765 (D.N.J. 2002) (citing *Ridgewood*, 172 F.3d at 253-54).  Rule 8 requires only a "short plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Conclusory allegations of concerted action absent facts actually reflecting such action, however, may be insufficient to state a conspiracy claim.  *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999); *see also Pellegrino Food Products Co. v. City of Warren*, 136 F. Supp. 2d 391, 409-10 (W.D. Pa. 2000).

The "liberal pleading requirement" was met in *In re Bayside Prison Litigation*, when Plaintiffs' complaint put Defendants "on notice of the relevant time period, the names of many of those Defendants who allegedly conspired, and, the object and purpose of the conspiracy."  190 F. Supp. 2d at 765.  Likewise, here, Plaintiff here has alleged facts to put Defendants on notice of the time period relevant to the alleged conspiracy and the

identities of most of the conspirators.  By stating that the Defendants agreed and

combined "among themselves *and with others*," Plaintiffs may not have identified all

alleged co-conspirators, but Plaintiff's Complaint identifies certain individuals with whom

the Defendants spoke or corresponded about the demolition plans.  Plaintiff has also put

Defendants on notice, in general terms, of the object of the conspiracy: "depriving [her] of

her federal constitutional and civil rights and state common law rights, by engaging in the

... conduct" that Plaintiff alleges elsewhere in the Complaint.  (*See* Compl., Doc. 1 ¶ 135.)

Specifically, Plaintiff has alleged a procedural due process claim based on a series

of events that included actions taken by, and communications among, Harvey,

Lemoncelli, Stillwater,[3] perhaps Cholish, and others who are not Defendants in this case.

And Plaintiff has alleged Fourth and First Amendment violations by Cholish that occurred

immediately after he phoned someone whose identity he would not reveal to Plaintiff.

Plaintiff's Complaint thus meets the liberal pleading requirement of Rule 8 of the Federal

Rules of Civil Procedure and sufficiently alleges a conspiracy claim under § 1983 against

the moving Defendants Cholish, Lemoncelli, and Harvey.  As mentioned above, however,

Plaintiff has not stated a claim against Defendants Propst and Fairbrother, because of

the lack of factual allegations involving them.  Defendants' motion to dismiss Count XVII

of the Complaint, except as to Defendants Propst and Fairbrother, will therefore be

denied.

---

[3]

"A private individual can become a state actor for purposes of § 1983
conspiracy liability if he or she is a willful participant in joint activity with the
state or its agents."  *Panayotides*, 35 F. Supp. 2d at 419 (internal quotation
marks omitted).  Stillwater has not joined Defendants' motion to dismiss.

**B. Civil Conspiracy Under Pennsylvania Law**

To state a claim for civil conspiracy under Pennsylvania law, a complaint must allege:

> (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.

*McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000).  Moreover, if there is no civil cause of action for a particular act, there can be no cause of action for conspiracy to commit that act.  *Id.*  As discussed above, Plaintiff has alleged a combination of two or more persons acting with a common purpose to commit the unlawful act of violating her federally protected rights (for which a cause of action exists) to procedural due process, free speech, and freedom from unreasonable seizure.  She has alleged overt acts taken in pursuance of that purpose, and that she suffered actual legal damage: namely, she was arrested and her house was demolished.  Further, she has alleged violations of her state law rights: she has stated claims against Officer Cholish for false arrest and imprisonment, malicious prosecution, and abuse of process and against Stillwater for conversion and destruction of property and negligent demolition.  She has alleged overt acts and legal damage related to these claims: specifically, her arrest and the demolition of her home.  And she has alleged that Stillwater and Cholish each agreed and combined with others in relation to the conduct underlying these state law claims.

In light of the liberal pleading requirement of Rule 8 of the Federal Rules of Civil Procedure and the early stage of litigation, Plaintiff's Complaint sufficiently puts

Defendants on notice of the nature of her civil conspiracy claim under Pennsylvania law. Defendants' motion to dismiss Count XVII of the Complaint, except as to Defendants Propst and Fairbrother, will therefore be denied.

## IX. Punitive Damages:

Defendants move to dismiss Plaintiff's claim for punitive damages.  To begin, punitive damages are not recoverable against municipalities, municipal entities, and local officials in their official capacity.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981).  Therefore, no claim for punitive damages may be made against the Borough.  Regarding the remaining moving Defendants who have been sued in their individual capacities, Defendants Cholish, Harvey, and Lemoncelli, in suits brought pursuant to 42 U.S.C. § 1983, punitive damages may be recovered from individual officers if their  "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  As Plaintiff has alleged that all these Defendants acted intentionally, conspiring to deprive Plaintiff of her constitutionally protected rights, she has alleged facts sufficient to support an award of punitive damages, and her claim for punitive damages will not be dismissed at this early stage.  October 18, 2007

## X. Leave to Amend Complaint

Plaintiff requests that, to the extent that the Court finds merit in Defendants' motion to dismiss, she be granted leave to amend her Complaint.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend the party's pleadings . . . by

leave of court . . . and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a).  "[U]nder Rule 15(a), a party may amend a pleading as a matter of course in response to a motion to dismiss grounded on a failure to state a claim upon which relief may be granted."  *Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451, 454 n.1 (3d Cir. 1996).  Furthermore, the Third Circuit Court of Appeals stated that "[o]ur precedent supports the notion that in civil rights cases district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  *Fletcher-Harlee Corp. V. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

District courts retain the discretion to deny a motion for leave to amend where it is apparent from the record that: (1) there is undue delay, bad faith or dilatory motive; (2) the amendment would be futile; or (3) the amendment would prejudice the other party. *See Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir. 2000).  None of those factors are present here; therefore, the Court will grant Plaintiff's motion for leave to amend her complaint.

**CONCLUSION**

Because Plaintiff has standing to bring this claim, I have considered its merits. Because it is redundant to sue both a municipality and its officials in their official capacities, the claims against municipal officials in their official capacities will be dismissed.  Because Plaintiff has made no factual allegations against Defendants Propst or Fairbrother, all claims against them will be dismissed, with twenty (20) days leave to amend granted to Plaintiff.  Because Plaintiff has stated claims against Defendant Cholish for unreasonable seizure, First Amendment retaliation, state law false arrest and

malicious prosecution, and false arrest under the Federal Constitution, Defendants'
motion to dismiss those claims will be denied.  Because Plaintiff has not stated claims
against Defendant Cholish under the Due Process Clause, for malicious prosecution
under the Federal Constitution, or for assault, battery, or abuse of process under state
law, those claims will be dismissed, with twenty (20) days leave to amend granted to
Plaintiff.  Because Plaintiff has stated claims for violation of her Fourth Amendment rights
against Defendant Harvey, her procedural due process rights against Defendants Harvey,
Lemoncelli, and Archbald Borough, and her rights under the Takings Clause against the
Borough, Defendants' motion to dismiss those claims will be denied.  Because Plaintiff
has stated claims for civil conspiracy both under § 1983 and Pennsylvania law,
Defendants' motion to dismiss the claims in Count XVII will be dismissed.  Because
punitive damages may not be awarded against a municipality, claims for punitive
damages against Archbald Borough will be dismissed.  Because Plaintiff has alleged
sufficient facts to support an award of punitive damages against the remaining moving
Defendants in their individual capacities, Defendants' motion to dismiss the claims for
punitive damages against Defendants Cholish, Lemoncelli, and Harvey will be denied.

  An appropriate order follows.


October 26, 2007       /s/ A. Richard Caputo
Date              A. Richard Caputo
                United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARY SERSHEN,

    Plaintiff

          v.

EUGENE CHOLISH, J. SCOTTY
LEMONCELLI, BOB HARVEY,
FORMER MAYOR KENNETH
PROPST, MAYOR ED FAIRBROTHER,
BOROUGH OF ARCHBALD and
STILLWATER ENVIRONMENTAL
SERVICES,

    Defendants.

CIVIL ACTION No. 3:07-CV-1011

(JUDGE CAPUTO

**ORDER**

    Now, this  26th  day of October, 2007, it is **HEREBY ORDERED** that Defendants'

Motion to Dismiss is **GRANTED** in part and **DENIED** in part, as follows:

    (1) All claims against Defendants Propst and Fairbrother, in Counts XI, XII, and

XVII, are hereby **DISMISSED**.

    (2) All claims against individual Defendants in their official capacities are hereby

**DISMISSED**.

    (3) Defendants' motion to dismiss the claims against Defendant Cholish for

unreasonable seizure (Count I), First Amendment retaliation (Count II), false arrest

under both state and federal law  (Count V), malicious prosecution under state law

(Count VI), and civil conspiracy (Count XVII) is hereby **DENIED**, and those claims

remain in the case.

    (4) Defendants' motion to dismiss the claims against Defendant Cholish for

violations of Plaintiff's rights under the Due Process Clause (Counts I and II), for malicious prosecution under the Federal Constitution (Count VI), assault (Count III), battery (Count IV), and abuse of process (Count VII) is hereby **GRANTED** and those claims are **DISMISSED**.

(5) Defendants' motion to dismiss claims against Defendant Lemoncelli for deprivation of Plaintiff's rights under the procedural component of the Due Process Clause (Count VIII) and for civil conspiracy (Count XVII) is hereby **DENIED,** and those claims remain in the case.

(6) Defendants' motion to dismiss claims against Defendant Harvey for violation of Plaintiff's rights under the procedural component of the Due Process Clause (Count IX), the Fourth Amendment (Count X), and for civil conspiracy (Count XVII) is hereby **DENIED**, and those claims remain in the case.

(7) Defendants' motion to dismiss claims against Defendant Archbald Borough for violation of Plaintiff's rights under the procedural component of the Due Process Clause and the Takings Clause (Count XIII) and for civil conspiracy (Count XVII) is hereby **DENIED,** and those claims remain in the case.

(8) Plaintiff's claim for punitive damages against the Borough is hereby **DISMISSED**.  Defendant's motion to dismiss Plaintiff's claim for punitive damages against Defendants Cholish, Lemoncelli, and Harvey in their individual capacities is hereby **DENIED**.

(9) Plaintiff has twenty (20) days from the date of this order in which to submit an amended complaint.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge