# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY SERSHEN<br><br>    Plaintiff,<br><br>    v.<br><br>EUGENE CHOLISH, J. SCOTTY LEMONCELLI, BOB HARVEY, BOROUGH OF ARCHBALD and STILLWATER ENVIRONMENTAL SERVICES,<br><br>    Defendants. | CIVIL ACTION No. 3:07-CV-1011<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court is Plaintiff Mary Sershen's Motion for Attorney Fees (Doc. 115) and Motion to Strike Defendants' "Responses" to Plaintiff's motion (Doc. 126). For the reasons set forth below, Plaintiff's petition will be granted in part and denied in part. Plaintiff's attorney Ms. Johanna L. Gelb will be awarded eighty-eight thousand, twenty-six dollars and seventy-five cents ($88,026.75) in attorney's fees and seven thousand, eight hundred eight dollars and eighty cents ($7,808.80) in costs for her work. Plaintiff's attorney Ms. Theresa J. Malski-Pezak will be awarded twelve thousand, three hundred thirty-nine dollars ($12,339.00) in attorney's fees and one hundred four dollars and two cents ($104.02) in costs for her work. Plaintiff's Motion to Strike will also be granted.

## **BACKGROUND**

### I.   **FACTUAL BACKGROUND**

The background of this case was discussed in detail in my Memorandum and Order of December 17, 2009 (Doc. 112). As such, the Court will not articulate all the factual

circumstances of this case and will only focus on the factual and procedural issues that are pertinent to the instant motions.

Plaintiff Mary Sershen ("Sershen") was a part owner of a home at 590 Main Street, Eynon, Pennsylvania ("the Barth property"), along with her ex-husband David Barth and her father Leonard Sershen. (Deed to 590 Main St., Doc. 66 Ex. 34.)[1] On July 11, 2005, a fire occurred at the Barth property causing extensive damage to the house. (Sershen Dep. 157:20-25, Mar. 30, 2009.) Anyone who viewed the property could "obviously" see the structure was involved in a fire. (Cholish Dep. 57:16-17, Mar. 11, 2009.) According to Defendant Harvey, the Fire Chief for the Borough of Archbald, immediately after the fire the Barth property could have been salvaged, but over time the building deteriorated and became unsafe. (Harvey Dep. 92:11-14, Feb. 3, 2009.) Because of the unsafe condition of the house, Defendant Harvey and Defendant Lemoncelli, the zoning and code enforcement officer for Archbald, both performed searches of the property without warrants or Plaintiff's consent.

Both Lemoncelli and Harvey recommended to the Borough council that the house be demolished because it was unsafe. (Lemoncelli Dep. 98:3-6, 98:20-99:3.) After hearing the results of the inspection by Harvey, the Borough believed the property was an imminent threat to the neighborhood. (Giordano Dep. 21:4-20, 24:2-8, 64:7-14.) It was determined that the building should be taken down pursuant to the unsafe building ordinance as an emergency, rather than under the public nuisance ordinance. (Lemoncelli Dep. 85:12-15.)

---

[1] In July 2006, there was a judgment entered against Sershen, David Barth and Leonard Sershen by Wells Fargo Bank, the mortgagor, which ultimately resulted in a judicial sale of the property in April 2007. (Sershen Dep. 152:24-153:25.)

2

The Borough Council instructed Lemoncelli to obtain three bids for the work demolishing the property.[2] (Lemoncelli Dep. 118: 10-16; Harvey Dep. 125:8-13.) Three bids were submitted for the demolition of the property, and the contract was awarded to Defendant Stillwater. (Archbald Borough Meeting Notes 3, Aug. 16, 2006.) The decision to demolish the property was made based on a consensus of the Borough Council. (Giordano Dep. 79:22-80:1.)

Attempts were made to contact Sershen before the property was demolished. (Giordano Dep. 55:11-18.) Lemoncelli's initial attempts to locate Sershen and her ex-husband were unsuccessful. (Daley Dep. 71:5-12, 72:12-19, 73:2-6.) At the time of this Court's Memorandum and Order of December 17, 2009, there was still genuine issue of material fact regarding the notice provided to Sershen before her house was demolished.

On August 19, 2006, Defendant Cholish, a police officer for the Borough of Archbald, was dispatched to the Barth property. (Cholish Dep. 54:1-2., Doc. 66.) Cholish was told that "unknown actors [were] taking down a house" at that address. (Cholish Dep. 56:1-3.) Upon arriving at the scene, Cholish spoke with Sershen, who was standing on the lawn in front of the house. (Cholish Dep. 56:20-22, 60:1-4.) Members of the demolition crew asked to have Sershen removed from the property, because they did not want her near the work for safety reasons. (Cholish Dep. 61:7-16.)[3]

Cholish called Mike Zielinski, crew manger for the Archbald Department of Public Works, to inquire about the demolition. (Cholish Dep. 61:22-24.) Zielinski called Cholish

---

[2] In accordance with 40 P.S. § 638, the Borough received an award of $10,000 from the Allstate Insurance Company, proceeds from the fire insurance policy owned by the Plaintiff for the Barth property, for demolition or other necessary steps in the event of an emergency. (Giordano Dep. 117:24-118:4.)

[3] During the encounter, Cholish asserts that Sershen was yelling obscene language at Bronson and the other workers, and that Cholish asked her to stop. (Cholish Dep. 61:18-21, 63:1-2) Sershen asserts that she was not using obscene language or screaming. (Sershen Dep. 55:17-23.)

3

back and told him that he was informed by Harvey that a contract was awarded at the last Borough meeting to a company to demolish the home. (Cholish Dep. 62:14-18.) Cholish then informed Sershen that there was a contract to take down the home. (Cholish Dep. 62:22-25.) Cholish asked her to "step off the property due to safety reasons." (Cholish Dep. 63:3-8.) Sershen then walked out to the roadway, where Cholish informed her that she needed to stay off the property, or else she would be arrested for trespassing and disorderly conduct. (Cholish Dep. 63:21-25.)

Sershen left the property, went back to her apartment, then returned with a camera to take pictures of the demolition. (Sershen Dep. 69:2-11.) Cholish returned to the Barth property along with Officer Minelli. (Cholish Dep. 104:8-11.) A member of the demolition crew stated to Cholish that Sershen had walked up alongside the house, had gone around back, and was trying to get in the house. (Cholish Dep. 101:21-24.) Cholish went over to Sershen and told her she was being arrested for defiant trespass. (Cholish Dep. 102:5-13, 117:16-20, 118:1-4.)

Cholish transported Sershen to the police station, and placed her in a cell. (Cholish Dep. 103:18-21.) ) The Chief of Police happened to walk in and convinced Cholish to file only charges for disorderly conduct and to release Sershen. (Cholish Dep. 134:16-19, 139:6-13.) Cholish asserts that Sershen was in the cell for approximately ten (10) minutes. (Cholish Dep. 135:5-6.) Sershen asserts that she was in the cell for thirty (30) to forty-five (45) minutes. (Sershen Dep. 89:23-90:1.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed a seventeen-count complaint against Cholish, Lemoncelli, Harvey, former Archbald Mayor Kenneth Propst, Archbald Mayor Ed Fairbrother, the Borough of Archbald

4

and Stillwater Environmental Services, Inc. on June 1, 2007. (Doc. 1.) On October 26, 2007, this Court entered an Order dismissing all claims against Propst and Fairbrother, all claims against the individual defendants in their official capacities, the claims against Cholish for violations of the due process clause, malicious prosecution, assault, battery and abuse of process, and all claims for punitive damages. (Doc. 19.) On February 29, 2008, in response to Stillwater's Motion to Dismiss, this Court entered an Order dismissing the § 1983 claim against Stillwater and the § 1983 conspiracy claim against Stillwater. (Doc. 25.)

On July 30, 2009, Plaintiff filed an amended complaint, containing the following causes of action: arrest without probable cause in violation of 42 U.S.C. § 1983 against Cholish (Count I), retaliation against free speech in violation of 42 U.S.C. § 1983 against Cholish (Count II), false arrest and imprisonment under state and federal law against Cholish (Count III), malicious prosecution against Cholish (Count IV), violation of the due process clause pursuant to 42 U.S.C. § 1983 against Lemoncelli (Count V), violation of the due process clause pursuant to 42 U.S.C. § 1983 against Harvey (Count VI), unreasonable search of the Barth property without a warrant in violation of 42 U.S.C. § 1983 against Harvey and Lemoncelli (Count VII), violation of the due process clause pursuant to 42 U.S.C. § 1983 against the Borough of Archbald (Count VIII), conversion and destruction of property against Stillwater (Count IX), negligent demolition against Stillwater (Count X), civil conspiracy against Cholish, Harvey, and Lemoncelli (Count XI), and civil conspiracy against Stillwater (Count XII). Plaintiff filed a Motion for Summary Judgment on August 31, 2009. (Doc. 62.) On September 11, 2009, all Defendants filed Motions for Summary Judgment (Docs. 72, 79.)

While these summary judgment motions were pending, on December 4, 2009,

Defendants Cholish, Lemoncelli, Harvey, and Borough of Archbald ("the Borough Defendants") made an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. (Doc 111.) The offer stated that the Borough Defendants "hereby offer to allow judgment to be taken against them by the Plaintiff for the sum of $50,000 with costs now accrued."

On December 17, 2009, this Court issue a Memorandum and Order on the pending motions for summary judgment. (Doc. 112.) In that opinion, Plaintiff's Motion for Summary Judgment was denied, Stillwater's motion was granted as to the civil conspiracy count, but denied as to the other counts, and the Borough Defendants' motion was granted with respect to the civil conspiracy claim and all the claims against Cholish and denied as to the other counts. The following day, within the prescribed fourteen-day period for Rule 68 Offers of Judgment, Plaintiff filed a request for entry of judgment against the Borough Defendants along with written proof of acceptance of the offer. (Doc. 113.) On December 30, 2009, Judgment was entered against the Borough Defendants for fifty thousand dollars ($50,000). (Doc. 114.)

On January 22, 2010, Defendant Cholish filed a Motion for Relief from Judgment, arguing that the order of December 17, 2009 had entered judgment in favor of Cholish, thereby making impossible to enter judgment against him when Plaintiff accepted the Rule 68 offer. (Doc. 120.) That motion was granted by this Court on April 20, 2010. (Doc. 135.)

On January 8, 2010, Plaintiff's attorneys filed a Motion for Attorney Fees and Costs, along with a brief in support, a detailed list of the hours expended, and several affidavits. (Docs. 115-119.) On January 25, 2010, the Borough Defendants filed a brief in opposition, a "Response to Plaintiff's Motion for Award of Costs and Attorney Fees," and a "Response to Plaintiff's Exhibits." (Docs. 122-124.) The "Response to Plaintiff's Motion for Award of

Costs and Attorney Fees" contained numbered paragraphs admitting or denying the corresponding paragraphs from Plaintiff's motion; the "Response to Plaintiff's Exhibits" contained a series of arguments about why specific hours billed should not be allowed by the Court. On February 1, 2010, Plaintiff filed a Motion to Strike the "Response to Plaintiff's Motion for Award of Costs and Attorney Fees" and the "Response to Plaintiff's Exhibits." (Doc. 126.) Both of these motions have now been fully briefed and are currently ripe for disposition.

## DISCUSSION

### I. Motion to Strike

Plaintiff moves to have the "Response to Plaintiff's Motion for Award of Costs and Attorney Fees" and the "Response to Plaintiff's Exhibits" stricken because they fail to comply with the briefing requirement set out in Local Rule 7.6. Rule 7.6 states, in relevant part, that opposing briefs shall be filed "together with any opposing affidavits, transcripts or other documents." Plaintiff argues that the additional documents submitted by the Borough Defendants are not permissible under Rule 7.6 and are an attempt to circumvent the Local Rule requiring that briefs be either less than fifteen (15) pages long or five thousand (5,000) words. *See* L.R. 7.8(b). Defendants, on the other hand, argue that their "Responses" fall under the category of "other documents."

Pursuant to the canon of *ejusdem generis*, a general term following specific terms should be limited to things similar to the specific terms. *See Leckey v. Stefano*, 501 F.3d 212, 220 (3d Cir. 2007). In this circumstance, the term "other documents" is preceded by affidavits and transcripts. Clearly, the local rule envisions parties attaching evidentiary documents to aid in the district court's understanding of the arguments contained in the opposing brief. The

7

phrase "other documents" cannot be read as broadly as Defendants suggest to encompass *any* documents.

As such, Defendants' "Response to Plaintiff's Motion for Award of Costs and Attorney Fees" and the "Response to Plaintiff's Exhibits" will be stricken for failure to comply with Local Rule 7.6. In particular, the "Response to Plaintiff's Exhibits" reads like a supplemental brief, which is impermissible. If Defendants wanted more space to expound on their arguments regarding Plaintiff's Motion for Attorney Fees, they could have sought leave to file a brief that exceed the page and/or word limits. Because they failed to do so, and the documents submitted by Defendants contain arguments, not evidence, Plaintiff's Motion to Strike will be granted.

**II.     Motion for Attorney Fees**

Defendants argue that Plaintiff is not entitled to attorney fees because the Offer of Judgment entered by Defendants was for "$50,000 with costs now accrued." Defendants contend that their offer, therefore, was for a lump sum that included liability, attorney fees, and costs. The Supreme Court has held that "the term 'costs' in Rule 68 includes attorney's fees awardable under 42 U.S.C. § 1988." *Marek v. Chesny*, 473 U.S. 1, 7 (1985). However, "[i]f an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion . . . it determines to be sufficient to cover the costs." *Id.* at 6. This Court has previously held that a Rule 68 Offer of Judgment with the exact language as the one at issue in the instant case

8

only bound the plaintiff to that amount as to liability, but left open the possibility to recover attorney fees and costs. *Laskowski v. Buhay*, 192 F.R.D. 480, 483 (M.D. Pa. 2000). Thus, the $50,000 Offer of Judgment only applied to liability for the claims settled, and Plaintiff is entitled to attorney fees and costs in addition to that amount.

### A. Lodestar

The United States Supreme Court has held that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson*, 465 U.S. 886, 888 (1984). This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Counsel*, 478 U.S. 546, 565 (1986); *Pennsylvania v. Delaware Valley Citizens' Counsel*, 483 U.S. 711, 730-31 (1987).

Attorney Gelb seeks $350 per hour for 558.90 hours of work, totaling one hundred ninety-five thousand, six hundred fifteen dollars ($195,615.00). Attorney Malski-Plezak seeks $150 per hour for 182.80 hours of work, totaling twenty-seven thousand, four hundred twenty dollars ($27,420.00).

### B. Reasonable Rate

The reasonable hourly rate is to be determined by the prevailing market rates in the relevant community. *Coleman v. Kaye*, 87 F.3d 1491, 1509 (3d Cir. 1996). The prevailing party bears the burden of establishing that the requested hourly rates are reasonable by way of satisfactory evidence. *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). If the plaintiff successfully meets this burden, the defendant may contest that prima facie case only with appropriate record evidence. *Smith v. Philadelphia*

9

*Housing Authority*, 107 F.3d 223, 225 (3d Cir. 1997). "In the absence of such evidence, the plaintiff *must* be awarded attorney's fees at her requested rate." *Id.* (emphasis added).

Attorney Gelb seeks $350 per hour and Attorney Malski-Pezak seeks $150 per hour. Here, Plaintiff has met her burden of establishing that her attorneys' sought after rates are reasonable by way of affidavits from her own attorneys and the affidavits of several practicing attorneys from this area. Defendants, however, have not produced any evidence whatsoever regarding the reasonable prevailing rate in the market. Although their brief argues that Defendants' counsel is being paid far less per hour than what Plaintiff's attorneys are seeking, Defendants have not produced any competent evidence to prove this assertion. Their brief was not accompanied by any affidavits or records that would suggest the reasonable rate. As such, this Court is bound to accept Plaintiff's claims that the rates sought are reasonable.

### C. Reasonable Hours

In a statutory attorney fees case, once the fee petitioner has met its burden to submit evidence that supports the hours worked, the burden shifts to the opposing party to challenge the reasonableness of the requested fee. *McKenna v. City of Philadelphia*, 582 F.3d 447, 459 (3d Cir. 2009) (citations omitted). A district court should not decrease a fee award based on factors that were not raised by the adverse party. *Id.* (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). In *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), the Supreme Court held that counsel "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."

Most of Defendants' brief in opposition focuses on the unsuccessful claims brought by Plaintiffs and argues that hours expended on those causes of action should not be

10

compensable. However, as will be discussed below, lowering the amount of attorneys fees based on unsuccessful claims is a separate inquiry from arriving at a reasonable number of hours worked for purposes of the lodestar. The only hours specifically challenged by Defendants are time in unnecessary depositions based on the August 19, 2006 arrest and on Defendants who were ultimately dismissed. Defendants also claim that it is excessive on its face to bill eight (8) to nine (9) hours in one day on one file.

First, this Court notes that it is not *per se* unreasonable to bill between eight and nine hours in a given day on one case. Certainly between preparation for a deposition, being present at a full day of depositions, and reviewing afterward, it is foreseeable for an attorney to bill up to nine (9) hours in a day. Secondly, the time spent deposing parties who were ultimately dismissed were not excessive, redundant or unnecessary. At the time these depositions were taken, Plaintiff's counsel had no way of knowing that these parties and the claims related to them would be dismissed. To the extent that Plaintiff's counsel deposed witnesses such as Propst or Fairbrother after their dismissal, their depositions were still germane to the case because of the surviving due process claims surrounding the borough. Thus, Defendants have not affirmatively pointed to any hours expended by Plaintiff's counsel that were not redundant, excessive or unnecessary and this Court will not consider any objections not raised by the adverse party.

### D.     **Unsuccessful Claims**

However, coming to the lodestar by multiplying the reasonable rate by the reasonable hours "does not end the inquiry." *Hensley*, 461 U.S. at 434. A district court may increase or decrease the fee award based on "results obtained," particularly where a party only prevails

11

on some of the claims for relief asserted. *Id.* In suits where distinctly different claims for relief are based on different facts and legal theories, work on one claim will be unrelated to work on the others. *Id.* at 435. The Supreme Court has held that "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.*

Where a plaintiff achieves only partial or limited success, the product of the hours reasonably expended times a reasonable hourly rate might turn out to be excessive; the most critical factor in making this determination is the degree of success obtained. *Id.* at 436. The *Hensley* court made it clear that there was no formula for decreasing the lodestar based on lack of success and that a district court "necessarily has discretion in making this equitable judgment." *Id.* at 436-37. A district court may attempt to identify specific hours that should be elimated or can simply reduce the award to account for the failed claims. *Id.*

In the case at bar, there are several severable claims that Plaintiff's counsel spent a significant amount of time on that were unsuccessful. First, all of the claims against Cholish were dismissed by this Court. First, at the motion to dismiss phase of the case, the claims against Cholish for violations of the Due Process clause, assault, battery, abuse of process and malicious prosecution were dismissed. Later, the remaining four claims against Cholish were dismissed at the summary judgment phase of the litigation. Importantly, the claims against Cholish were based on separate legal theories that arose from a completely distinct factual set of circumstances than the other Borough Defendants. The claims against Cholish arose from the August 19, 2006 arrest of Plaintiff and the subsequent transportation and

12

detainment in jail. The claims against the other Borough Defendants arose from the previous searches of Plaintiff's property and the lack of process afforded Plaintiff when the other Borough Defendants diverted the insurance proceeds from Plaintiff and demolished her home without sufficient notice. Four (4) of the twelve (12) claims in Plaintiff's Amended Complaint were against Cholish for actions arising out of the factually and legally distinct August 19, 2006 arrest. Plaintiff was not successful on any of these. As such, the lodestar amount should be adjusted downward for a lack of success on these claims.

Furthermore, many of the hours claimed by Plaintiff's counsel were for work done on the claims against Stillwater, which all sounded in Pennsylvania state law. Plaintiff did not have any claims against Stillwater that would be compensable under the fee-shifting scheme of 42 U.S.C. § 1988. Likewise these claims are easily severable both factually and legally from the claims brought against the Borough Defendants. Of the twelve counts in the Amended Complaint, three (3) of the twelve (12) claims were against Stillwater. In fact, some of those claims survived the summary judgment motion and are still before this Court. The only claims that were settled pursuant to the Rule 68 offer were those of the remaining Borough Defendants. Thus, as to Stillwater, this Court cannot currently deem Plaintiff a prevailing party on those claims. Moreover, Plaintiff was also unsuccessful on the claims brought against Propst and Fairbrother in her original Complaint.

All in all, Plaintiff's counsel was unsuccessful on well over half of the causes of action brought in this case. Of those, several, including the claims brought against Stillwater and Cholish, were distinctly different claims based on different facts and legal theories. This warrants a significant lowering of the lodestar based on lack of success. As such, this Court will lower the lodestar amount by fifty-five per cent (55%). Attorney Gelb's fee will be lowered

from the one hundred ninety-five thousand, six hundred fifteen dollars ($195,615.00) amount in the lodestar to eighty-eight thousand, twenty-six dollars and seventy-five cents ($88,026.75). Attorney Malski-Pezak's fee will be lowered from the twenty-seven thousand, four hundred twenty dollars ($27,420.00) lodestar amount to twelve thousand, three hundred thirty-nine dollars ($12,339.00).

### E. Costs

When reviewing petitions for costs, courts look to "whether the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented." *Coalition to Save Our Children v. State Bd. of Ed. of the State of Delaware,* 901 F. Supp. 824, 833 (D. Del. 1995). The court may deny a petition for costs when the court finds no documentation, or the documentation is insufficient. *See id. See also Rush v. Scott Specialty Gases, Inc.,* 934 F. Supp. 152 (E.D. Pa. 1996).

This Court finds that the costs sought by Plaintiff's counsel are reasonable, necessary to the litigation and adequately documented. Plaintiff's counsel seeks reimbursement for the cost of filing the Complaint, postage, mileage, photocopying, conference calls, and court reporters' fees for depositions. All of these are reasonable and necessary. Thus, this Court will grant Attorney Gelb's request for seven thousand, eight hundred eight dollars and eighty cents ($7,808.80) and Attorney Malski-Pezak's request for one hundred four dollars and two cents ($104.02).

April 28, 2010                                                        /s/ A. Richard Caputo  
Date                                                                A. Richard Caputo  
                                                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARY SERSHEN,

    Plaintiff

    v.

EUGENE CHOLISH, J. SCOTTY
LEMONCELLI, BOB HARVEY,
BOROUGH OF ARCHBALD and
STILLWATER ENVIRONMENTAL
SERVICES,

    Defendants.

CIVIL ACTION No. 3:07-CV-1011

(JUDGE CAPUTO)

## ORDER

**NOW**, this  28th  day of April, 2010, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike (Doc. 126) is **GRANTED** and Plaintiff's Motion for Attorney Fees and Costs (Doc. 115) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    Attorney fees are awarded in the following amount:

    A)    Attorney Johanna L. Gelb is awarded eighty-eight thousand, twenty-six dollars and seventy-five cents ($88,026.75).
    B)_    Attorney Theresa Malski-Pezak is awarded twelve thousand, three hundred thirty-nine dollars ($12,339.00).

(2)    Costs are awarded in the following amount:

    A)    Attorney Johanna L. Gelb is awarded seven thousand, eight hundred eight dollars and eighty cents ($7,808.80).
    B)    Attorney Theresa Malski-Pezak is awarded  one hundred four dollars and two cents ($104.02).

    /s/ A. Richard Caputo
    A. Richard Caputo
    United States District Judge